UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

GILES MCGHEE                                          CIVIL ACTION

VERSUS                                               NO. 20-2399

DARREL VANNOY, WARDEN                                SECTION "S" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for

disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the

Rules Governing Section 2254 Cases.   Upon review of the entire record, I have determined that a

federal evidentiary hearing is unnecessary.[1]   For the following reasons, I recommend that the

petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    INTRODUCTION

On September 1, 2020, the Clerk of Court filed Giles McGhee's petition for federal habeas

corpus relief under 28 U.S.C. § 2254, in which he asserted five claims:

> (1)     (a) the use of non-unanimous verdicts is unconstitutional, (b) his trial and
>         appellate counsel were ineffective for failing to assert the claim in the
>         appropriate proceeding, and (c) the Supreme Court's decision in *Ramos v.
>         Louisiana*, 140 S. Ct. 1390 (2020), was not a new rule or prohibited by
>         *Teague v. Lane*, 489 U.S. 288 (1989)*, and should have been retroactively
>         applied to his conviction;

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on
a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i))
or the claim relies on a factual basis that could not have been previously discovered by exercise of due
diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence
that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  *Id*.
§ 2254(e)(2)(B).

(2)    state trial court violated McGhee's constitutional rights by (a) limiting the scope of his counsel's *voir dire* questions and (b) tainting the jury with its comments on the defendant's right to testify;

(3)    the evidence was insufficient to support the verdict;

(4)    his counsel denied him the right to testify; and

(5)    he received ineffective assistance of counsel when counsel failed to request a voice recognition test, failed to have the 911 tape analyzed for background noise, and failed to investigate.[2]

On March 9, 2021, after receiving a response in opposition (ECF No. 6) from the State, I issued a Report and Recommendation in which I recommended that McGhee's federal habeas corpus petition be dismissed without prejudice for his failure to exhaust state court review of these claims:

(1)(c)    the Supreme Court's decision in *Ramos*, 140 S. Ct. at 1390, was not a new rule or prohibited by *Teague*, 489 U.S. at 288, and should have been retroactively applied to his conviction; and

(2)(b)    the state trial court violated his constitutional rights by tainting the jury with its comments on the defendant's right to testify.[3]

McGhee was also given the option to dismiss these unexhausted claims and proceed to review of his remaining exhausted claims.   ECF No. 9, at 19.

On March 23, 2021, McGhee objected to dismissal of his petition and requested instead that his unexhausted claims be dismissed to allow further review of the remaining claims.   ECF No. 10.   The District Judge granted McGhee's motion and referred the exhausted claims, outlined later in this report, to me for further review.   ECF No. 11.

---

[2] ECF No. 1; ECF No. 1-2.
[3] ECF No. 9, at 16.

## II.    **FACTUAL BACKGROUND**

McGhee is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.  ECF No. 1, at 1.  On May 11, 2012, McGhee was indicted by a Tangipahoa Parish Grand Jury on two counts of first degree murder.[4]  McGhee pled not guilty on May 17, 2012.[5]

The Louisiana First Circuit Court of Appeal summarized the facts established at trial as follows:

> On April 5, 2012, at approximately 5:52 a.m., Hammond Police Department officers were dispatched to Mallard Drive in Hammond, after the reported shooting of victims Tamica Muse and Karum Smith.  The shootings were reported by Muse's daughter, Tremecia Matthews, who was in her bedroom when she heard an angered voice, which she identified as the defendant's, just before gunshots were fired.  After hearing what she assumed was the front door being slammed shut, Matthews called out to her mother and subsequently, after her mother did not respond, discovered the victims in her mother's bedroom.  When the officers arrived, Muse (the female victim who had a tumultuous romantic relationship with the defendant) and Smith (Muse's boyfriend at the time) were lying in Muse's bed with apparent gunshot wounds.  Muse suffered two gunshot wounds, including a fatal brain injury, and Smith died from a gunshot wound to the head that severed the carotid artery.  The defendant was apprehended when his vehicle crashed during police pursuit.  He was transported to the Louisiana State Police headquarters, where he provided an alibi during a transcribed police interview.  The defendant's stepdaughter, Nicole Flippen, initially corroborated the defendant's alibi that he was at her house in Baton Rouge at the time of the shootings.  Thereafter, however, she admitted that she had been untruthful, and that the defendant asked her to lie for him when he confessed to her that he committed the shootings.[6]

---

[4] State Record (hereinafter "St. R.") Vol. 1 of 6, at 11-12, Indictment, 5/11/12; *id*. at 28, Grand Jury Return, 5/11/12.

[5] *Id*. at 1, Min. Entry, 5/17/12.

[6] *State v. McGhee*, No. 2014-KA-1359, 2015 WL 996370, at *1 (La. App. 1st Cir. Mar. 6, 2015); St. R. Vol. 5 of 6, 1st Cir. Opinion, at 2-3, 2014-KA-1359, 3/6/15.

McGhee went to trial before a jury on February 3 through 6, 2014.[7]  The jury found him guilty as charged on both counts of first degree murder.[8]  At a March 12, 2014, hearing, the state trial court denied McGhee's motions for new trial, post-verdict judgment of acquittal, and arrest of judgment.[9]  After waiver of statutory sentencing delays, the court sentenced McGhee to serve consecutive life sentences in prison without benefit of parole, probation, or suspension of sentence.[10]  The court later denied McGhee's motions to reconsider the sentence.[11]

On direct appeal to the Louisiana First Circuit, McGhee's appointed counsel argued that the state trial court violated McGhee's constitutional rights when it interrupted and limited the scope of his counsel's *voir dire* questions, denied the motion for mistrial based on that limitation, and tainted the jury with comments on a defendant's right to not testify.[12]  On March 6, 2015, the Louisiana First Circuit affirmed McGhee's convictions and sentences.[13]  The court held that the state trial court did not err when it denied McGhee's motion for mistrial based on his claim that the state trial court interrupted the flow of defense counsel's *voir dire* by interjecting and admonishing defense counsel for being repetitive.[14]  The court also held that McGhee was precluded from arguing for the first time on appeal that the state trial court tainted the jury with its discussion of the reasons why a defendant may choose not testify.  The court declared this

---

[7]  St. R. Vol. 1 of 6, at 4-8, Trial Mins., 2/3/14; Trial Mins., 2/4/14; Trial Mins., 2/5/14; Trial Mins., 2/6/14; St. R. Vol. 3 of 6, at 468-671, Trial Tr., Vol. I, 2/3/14; *id.* at 672-738, Trial Tr., Vol. II, 2/4/14; St. R. Vol. 4 of 6, at 739-880, Vol. II, 2/4/14; *id.* at 881-1016, Trial Tr., Vol. III, 2/5/14; *id.* at 1017-36, Trial Tr., Vol. IV, 2/6/14; St. R. Vol. 5 of 6, at 1037-1104, Trial Tr., Vol. IV, 2/6/14.

[8]  St. R. Vol. 1 of 6, at 9, Trial Mins., 2/6/14; St. R. Vol. 5 of 6, at 1095-96, Trial Tr., Vol. IV, 2/6/14.

[9]  St. R. Vol. 1 of 6, at 9A, Amended Min. Entry, 9/3/14; St. R. Vol. 5 of 6, Sentencing Tr., 3/12/14; St. R. Vol. 2 of 6, at 441, Motion for New Trial, 2/21/14; *id.* at 443, Motion for Post-Verdict Judgment of Acquittal, 2/21/14; *id.* at 445, Motion in Arrest of Judgment, 2/21/14.

[10]  St. R. Vol. 5 of 6, Sentencing Tr., at 9, 3/12/14.

[11]  St. R. Vol. 5 of 6, Min. Entry, 4/8/14; St. R. Vol. 2 of 6, at 449, Motion to Reconsider Sentence, 3/20/14.

[12]  St. R. Vol. 5 of 6, Appeal Brief, 2014-KA-1359, 10/15/14.

[13]  *McGhee*, 2015 WL 996370, at *1 & *5; St. R. Vol. 5 of 6, 1st Cir. Opinion, 2014-KA-1359, at 2 & 9, 3/6/15.

[14]  *Id.* at 9.

argument was barred from appellate review for lack of a contemporaneous objection under LA. CODE CRIM. PROC. art. 841.[15]

On May 2, 2016, the Louisiana Supreme Court summarily denied McGhee's related writ application, which did not include the procedurally barred "trial court tainted the jury" argument.[16] McGhee did not file an application for writ of certiorari with the United States Supreme Court within ninety (90) days,[17] and thus, his convictions and sentences became final on Monday, August 1, 2016.[18]

On January 30, 2017, McGhee submitted to the state trial court an application for post-conviction relief in which he asserted the following claims:

(1)     the state failed to meet the burden of proof beyond a reasonable doubt to support the verdict;

(2)     he was denied his Fifth, Sixth, and Fourteenth Amendment rights when his counsel denied him the right to testify;

(3)     he was denied effective assistance of counsel when counsel failed to request a voice recognition test, have the 911 recording analyzed for background noise, and failed to investigate; and

(4)     the state trial court abused its discretion when it accepted a non-unanimous jury verdict, and his counsel was ineffective for failing to object or raise the issue on appeal.[19]

---

[15] *Id.* at 8.

[16] *State ex. rel. McGhee v. State*, 206 So. 3d 876 (La. 5/2/2016); St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2015-KH-0699, 5/2/16; *id.*, La. Sup. Ct. Writ Application, 15-KH-699, 4/9/15 (dated 4/6/15).

[17] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); SUP. CT. R. 13(1).

[18] The period ended on Sunday, July 31, 2016, causing the final day to fall on the next business day, Monday, August 1, 2016. *See* LA. CODE CRIM. PROC. art. 13 ("The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday"); FED. R. CIV. PROC. 6(a)(1)(C) (". . . if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

[19] St. R. Vol. 5 of 6, Application for Post-Conviction Relief, 2/2/17 (dated 1/30/17).

After receiving an opposition memorandum from the State, the state trial court denied the application on January 30, 2019.[20]  The court held that McGhee's first claim was barred from post-conviction review by LA. CODE CRIM. PROC. art 930.4(C) for his inexcusable failure to assert the claim on direct appeal.   The court also held that claims two and three were barred from post-conviction review under La. Code Crim. Proc. art. 930.4(B) because McGhee inexcusably failed to assert the claims in the proceedings leading to his conviction.   The court also summarily denied the fourth claim as meritless.

On April 29, 2019, the Louisiana First Circuit denied McGhee's writ application as procedurally improper under LA. APP. R. 2-18.7 and 4-9 for his failure to attach required documentation.[21]  The court gave McGhee until June 25, 2019, to file a corrected application, which he apparently did.[22]  The court denied his corrected writ application without stated reasons on September 17, 2019.[23]

On July 24, 2020, the Louisiana Supreme Court denied McGhee's timely-filed[24] writ application holding that he failed to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), or meet his burden of proof under LA. CODE CRIM. PROC. art. 930.2 on the remaining claims.[25]

---

[20] *Id.*, Trial Court Order, 1/30/19; *id.*, State's Opposition, 12/14/18.

[21] *State v. McGhee*, No. 2019-KW-0236, 2019 WL 1902652, at *1 (La. App. 1st Cir. Apr. 29, 2019); St. R. Vol. 5 of 6, 1st Cir. Order, 2019-KW-0236, 4/29/19; St. R. Vol. 6 of 6, Copy of 1st Cir. Writ Application (dated 1/30/19).

[22] St. R. Vol. 6 of 6, Copy of Resubmitted 1st Cir. Writ Application (cover letter dated 5/15/19).

[23] *State v. McGhee*, No. 2019-KW-0715, 2019 WL 4447707, at *1 (La. App. 1st Cir. Sep. 17, 2019); St. R. Vol. 5 of 6, 1st Cir. Order, 2019-KW-0715, 9/17/19.

[24] Contrary to the State's assertion, McGhee's writ application was timely filed electronically on October 3, 2019, according to the "E-File Received" stamp on the document itself.   St. R. Vol. 6 of 6, La. Sup. Ct. Writ Application, 19-KH-1712, at 1, 10/24/19 (e-filed 10/3/19); *see* ECF No. 6, at 2 (State's contention that the writ was untimely filed).   McGhee filed the writ application within 30 days of issuance of the appellate court's order as allowed by LA. SUP. CT. R. X § 5.

[25] *State v. McGhee*, 299 So. 3d 51 (La. 7/24/2020); St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2019-KH-01712, 7/24/20; *id.*, La. Sup. Ct. Writ Application, 19-KH-1712, 10/24/19 (dated 10/3/19).

## II.   FEDERAL HABEAS PETITION

McGhee's remaining claims before the court are as follows:

(1)     (a) the use of non-unanimous verdicts is unconstitutional, and (b) his trial and appellate counsel were ineffective for failing to assert the claim in the appropriate proceeding;

(2)     (a) state trial court violated McGhee's constitutional rights by limiting the scope of his counsel's *voir dire* questions;

(3)     the evidence was insufficient to support the verdict;

(4)     his counsel denied him the right to testify; and

(5)     he received ineffective assistance of counsel when counsel failed to request a voice recognition test, failed to have the 911 tape analyzed for background noise, and failed to investigate.[26]

The State filed a response in opposition to McGhee's petition asserting that the petition was timely filed.[27]   The State also addressed the exhaustion doctrine, which the court has already resolved.   The State further argued McGhee's exhausted claims are without merit.

## III.   LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996,[28] and applies to habeas petitions filed after that date.[29]   McGhee's petition is deemed filed on September 1, 2020.[30]

---

[26] ECF No. 1; ECF No. 1-2; *see also* ECF Nos. 9, 11.

[27] ECF No. 6.

[28] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[29] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[30] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.   *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The prison legal department's official stamps indicate that the pleadings were received from

## A.    <u>Preliminary Considerations</u>

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court.   In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[31]   The State asserts, and the record reflects, that McGhee's federal petition was timely filed under the AEDPA.   As previously addressed, in addition to the failure to exhaust the two claims that have been dismissed, the State also asserted that McGhee's claims three, four, and five were procedurally barred from federal review.   Out of an abundance of caution, I will reiterate my discussion of the procedural default doctrine, because my findings related to these three claims were not specifically addressed by the District Judge's Order.

### 1.    Doctrines of Exhaustion and Technical Exhaustion/Procedural Default

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."[32]   A federal habeas petition should be dismissed if state remedies have not been exhausted as to *all* of the federal habeas claims and supporting arguments brought by the petitioner.[33]

The exhaustion requirement is satisfied when the substance of the federal habeas claims has been "fairly presented to the *highest* state court" in a procedurally proper manner.[34]   "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including

---

McGhee on September 1, 2020, the date he signed them, and electronically mailed to this court.   ECF No. 1-2, at 78.

[31] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[32] *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419.

[33] *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).

[34] *Id.* at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added).

discretionary review when that review is part of the State's ordinary review procedures.[35]    The federal claim also must be "the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."[36]    "This requirement is not satisfied if the petitioner presents *new legal theories* or *new factual claims* in his federal application."[37]    It also is not enough for a petitioner to raise the claims in the lower state courts if they were not also specifically presented to the Louisiana Supreme Court in a procedurally proper manner.[38]

The burden is on the petitioner to properly assert his federal claim in the state courts in a manner and time when state procedural law permits its consideration on the merits.[39]    Thus, when a petitioner has failed to exhaust state court remedies and the state court to which petitioner would be required to present his claims would now find the claims to be procedurally defaulted or barred, the claims are procedurally defaulted for purposes of federal habeas review.[40]

A habeas petitioner who has defaulted his federal claims in this way meets the "technical" requirements for exhaustion, because there are no state remedies left "available" to him.[41]    The United States Supreme Court has determined that the exhaustion requirement "'refers only to remedies still *available* at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'"[42]    The procedural bar created by a petitioner's technical exhaustion stands as an adequate and independent state

---

[35] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).

[36] *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).

[37] *Id.* at 387 (citing *Nobles*, 127 F.3d at 420) (emphasis added).

[38] *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

[39] *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (citing *Baldwin*, 541 U.S. at 30-32).

[40] *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

[41] *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *see* 28 U.S.C. § 2254(b); *Coleman*, 501 U.S. at 732 (citing *Engle v. Isaac*, 456 U.S. 107, 125-126 & n.28 (1982)).

[42] *Gray*, 518 U.S. at 161-62 (quoting *Engle*, 456 U.S. at 125 n.28, and *Castille v. Peoples*, 489 U.S. 346, 351 (1989)) (emphasis added, citations omitted).

procedural ground and prevents federal habeas corpus review of a defaulted claim.[43]    A petitioner's technically exhausted and defaulted claims are dismissed without review of the merits.

### 2. State Court Review of Claims Three, Four, and Five was Exhausted and the Claims are *not* in Procedural Default

The State urged that McGhee failed to exhaust state court review of his federal claims three, four, and five, because the "[t]he state trial court denied the claim[s] procedurally."    ECF No. 6, at 6.    While the state *trial* court did so, that court's ruling is not determinative of a procedural bar in this federal court.    This federal habeas court also must look to the *last* reasoned opinion to determine how the state courts resolved the issues.[44]    McGhee went on to seek review of his claims in the higher state courts, providing those courts the opportunity to review his claims.

The record shows that McGhee asserted part of claim one (non-unanimous jury verdict and ineffective assistance of counsel), claim three (insufficient evidence), claim four (denied right to testify), and claim five (ineffective assistance of counsel) in his 2017 state court application for post-conviction review.[45]    As indicated by the State, all but the first claim (non-unanimous jury verdict and related ineffective assistance) were denied by the state trial court on procedural grounds, specifically LA. CODE CRIM. PROC. arts. 930.4(B),(C), because the claims could have

---

[43] *Gray*, 518 U.S. at 162 ("[t]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim . . ."); *see also Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas... ."); *Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

[44] *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019) (procedural default triggered only when the *last* state court to render a judgment clearly and expressly indicates its judgment is independent of federal law and rests on a state procedural bar) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)); *accord Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (the last reasoned state court decision controls the basis for federal habeas review under the AEDPA, whether it be on the merits or procedural grounds); *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

[45] St. R. Vol. 5 of 6, Application for Post-Conviction Relief, at i, 2/2/17 (dated 1/30/17).

been and were not asserted in prior state court proceedings.[46]    The court summarily denied the

non-unanimous jury claim (which did not include the *Ramos* and *Teague* discussion) as meritless.

McGhee presented the same claims and arguments to the Louisiana First Circuit in his 2019 writ

application, which was denied without stated reasons.[47]    McGhee then presented the claims in his

2019 Louisiana Supreme Court writ application,[48] which was denied by the court ***with*** reasons on

July 24, 2020:

> Denied.   Applicant fails to show that he received ineffective assistance of counsel
> under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80
> L.Ed.2d 674 (1984).   As to his remaining claims, applicant fails to satisfy his post-
> conviction burden of proof.   La.C.Cr.P. art. 930.2.[49]

The Louisiana Supreme Court's decision was the last reasoned opinion on McGhee's federal

claims one (without *Ramos* and *Teague*), three, four, and five.    While the opinion was brief, it was

no less a reasoned decision on the merits and not based on procedural grounds.[50]

The record shows that McGhee presented his post-conviction claims to each level of the

state courts through the Louisiana Supreme Court in timely and properly filed post-conviction

proceedings to complete exhaustion for purposes of federal review.    The State's assertion of a

failure to exhaust defense as to these claims, specifically insufficient evidence (claim three), denial

of right to testify (claim four), and ineffective assistance (claim five), is inconsistent with the

record and must be rejected.

The State's urging of a procedural bar to review of these claims is also not supported by

the record and must be rejected.    The Louisiana Supreme Court denied McGhee's post-conviction

---

[46]  *Id.*, Trial Court Order, 1/30/19.

[47]  *Id.*, 1st Cir. Order, 2019-KW-0715, 9/17/19.

[48]  St. R. Vol. 6 of 6, La. Sup. Ct. App. for Writ of Certiorari or Review, at i, 19-KH-1712, 10/24/2019 (e-
filed 10/3/2019; dated 10/1/2019)

[49]  *McGhee*, 299 So. 3d at 51; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2019-KH-01712, 7/24/20.

[50]  *Hebert v. Rogers*, 890 F.3d 213, 221 (5th Cir. 2018) (explaining "the brevity of a state court's opinion is
immaterial" to application of the AEDPA standard).

claims under *Strickland* and based on McGhee's failure to meet his burden of proof on the remaining claims.   The Supreme Court's standards set forth in *Strickland* are the basis of a merits review for a claim of ineffective assistance of counsel.   McGhee's fourth[51] and fifth federal claims (as well as part of his first claim) challenged the effective assistance of his counsel and were resolved under *Strickland*.   With no state imposed procedural bar to consider, McGhee's ineffective assistance of counsel claims are *not* in procedural default and can be addressed on the merits under AEDPA standards.

As for the "remaining claims," including McGhee's insufficient evidence and non-unanimous jury claims (minus the *Ramos* and *Teague* components), the Louisiana Supreme Court referenced LA. CODE CRIM. PROC. art. 930.2, which provides that "[t]he petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted."   Federal habeas courts in this circuit have held that the Louisiana Supreme Court's citation to LA. CODE CRIM. PROC. 930.2 without more is a decision on the merits and *not* a state procedural bar.[52]

The Louisiana Supreme Court's ruling in this case bypassed the lower court's procedural denial of the ineffective assistance of counsel claims and instead denied those claims under *Strickland*.   The high court did not reference, as it regularly does, any procedural rule relied upon by the lower courts when dismissing McGhee's "remaining claims."   Significantly, the court's Article 930.2 reference also included dismissal of McGhee's "non-unanimous jury" claim, which the State concedes was addressed on the merits.   The "remaining claims" were considered together and disposed of based on McGhee's failure to meet a burden of proof, with no distinction

---

[51] The standard articulated in *Strickland* applies to claims alleging an attorney's interference with the right to testify.   *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001) (citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001)).

[52] *Darby v. Vannoy*, No. 19-13900, 2020 WL 5468953, at *7 (E.D. La. Aug. 14, 2020) (collecting cases), *R.&R. adopted*, 2020 WL 5436571, at *1 (E.D. La. Sep. 10, 2020).

or procedural reference made by the state's high court. In other words, there is no indication (clear or presumptive) that the Louisiana Supreme Court relied on a procedural rule to dispose of any of McGhee's claims in its 2020 ruling denying him post-conviction relief.[53]

This court must therefore reject the State's procedural default portion of the defense based solely on the state *trial* court's invocation of a procedural rule as that basis was not clearly followed in the Louisiana Supreme Court's later reasoned decision. Review of McGhee's claims three, four, and five was exhausted, and the claims are not procedurally barred from review on the merits.

### B.    McGhee's Remaining Claims

#### 1.    Standards of a Merits Review

Title 28 U.S.C. § 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[54] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[55] The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1). The determination receives deference, unless the state

---

[53] *See Woodfox v. Cain*, 609 F.3d 774, 795-96 (5th Cir. 2010) ("Lest there be any doubt, we have adopted a three-part test to decide whether a state court's decision was an adjudication on the merits when that decision is unclear. We consider the following: '(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits.'") (quoting *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999)).
[54] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).
[55] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[56]    The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[57]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[58]   "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[59]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[60]   Rather, under the "unreasonable application" standard, "the only question for a

---

[56] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[57] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[58] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[59] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[60] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

federal habeas court is whether the state court's determination is objectively unreasonable."[61]    The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[62]

### 2.    Claim 1(a):    Non-Unanimous Jury Verdict

McGhee asserts that Louisiana's use of non-unanimous verdict at his trial in 2014 was unconstitutional.    The record reflects that McGhee was convicted as charged on both counts by an 11 to 1 guilty verdict on February 6, 2014.[63]    The State contends that the denial of relief by the state courts was proper because there was no law compelling the use of a unanimous verdict at the time of McGhee's conviction.

As outlined above, McGhee challenged his non-unanimous verdict in the state courts on post-conviction review.    The last reasoned state court decision was that of the Louisiana Supreme Court on May 2, 2016, which denied him relief for failure to meet his burden under LA. CODE CRIM. PROC. art. 930.2.[64]

McGhee's challenge to the constitutionality of state law presents a pure question of law.[65] Thus, McGhee may obtain federal habeas corpus relief only if the state courts' decision was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent.

The AEDPA deferential standard requires this to apply law that was clearly established "at the time the conviction becomes final."[66]    As calculated and explained previously, McGhee's

---

[61] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).
[62] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).
[63] St. R. Vol. 5 of 6, at 632, 634, Trial Tr., Vol. IV, 2/6/14.
[64] *McGhee*, 299 So. 3d at 51; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2019-KH-01712, at 2, 7/24/20.
[65] *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007).
[66] *Peterson v. Cain*, 302 F.3d 508, 511 (5th Cir. 2002) (citing *Williams*, 529 U.S. 380-81).

conviction was final on August 1, 2016, when he did not file an application for writ of certiorari with the United States Supreme Court within ninety (90) days after the Louisiana Supreme Court denied his post-appeal writ application on May 2, 2016.[67]   At that time, the clearly established United States Supreme Court precedent applicable to his claim was directly contrary to McGhee's argument.

In *Apodaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Louisiana*, 406 U.S. 356 (1972), the United States Supreme Court upheld the constitutionality of state laws, including Louisiana's law, that permitted criminal defendants to be convicted by less than unanimous jury votes.   While the Supreme Court itself has described the *Apodaca/Johnson* holding as "the result of an unusual division among the Justices," it also made clear at that time that "although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, it does not require a unanimous verdict in state criminal trials."[68]

In the habeas corpus context, the United States Fifth Circuit Court of Appeals recognized that a prisoner's constitutional challenge to a state court conviction by a non-unanimous jury must be rejected under *Apodaca/Johnson* "because the Supreme Court 'has not held that the Constitution imposes a jury unanimity requirement.'"[69]   Thus, at the time of McGhee's conviction, the use of the non-unanimous verdict rule by the Louisiana court was not contrary or unreasonable application of clearly established Supreme Court precedent existing at the time.

McGhee and the respondent recognize that, following the finality of McGhee's conviction, the United States Supreme Court issued *Ramos*, 140 S. Ct. at 1407, finding that unanimity in jury

---

[67] *State ex. rel. McGhee*, 206 So. 3d at 876; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2015-KH-0699, 5/2/16.
[68] *McDonald v. City of Chicago*, 561 U.S. 742, 765 n.14 (2010) (citing *Apodaca*, 406 U.S. at 404 and *Johnson*, 406 U.S. at 356).
[69] *Hoover v. Johnson*, 193 F.3d 366, 369 (5th Cir. 1999) (quoting *Richardson v. United States*, 526 U.S. 813, 821 (1999) and citing *Johnson*, 406 U.S. at 366).

verdicts is required under Sixth Amendment.  On May 17, 2021, however, the Court held in *Edwards v. Vannoy*, No. 19-5807, 2021 WL 1951781, at *11 (2021), that "*Ramos* announced a new rule of criminal procedure" that "does not apply retroactively on federal collateral review." *Ramos*, therefore, did not alter the application of the Supreme Court precedent existing at the time of McGhee's conviction under AEDPA review.[70]

In 2018, Louisiana voters approved an amendment to Article I, Section 17(A) of the Louisiana Constitution, to require unanimous jury verdicts in cases like this one.  The state constitutional amendment, however, is expressly limited to offenses "committed on or after January 1, 2019."  Accordingly, it does not apply retroactively to McGhee's 2014 conviction.

For the foregoing reasons, based upon the law as it was at the time of his conviction, McGhee is not entitled to federal habeas corpus relief on this claim.

### 3.  Claim 2(a):  Limitation of *Voir Dire*

McGhee claims that the state trial court abused its discretion under state law when it limited the scope of his counsel's *voir dire* questions.  He claims that the court lectured the jury on concepts of burden of proof, reasonable doubt, and the defendant's right to not testify, instead of allowing counsel to question individual jurors about their understanding of these terms.  He also argues that the state trial court erred in denying his counsel's requests for mistrial based on the interruption of the flow of counsel's *voir dire* questioning and denying his opportunity to question the individual jurors on those points.  The State argues in its opposition response that the state trial court's statements and rulings did not deny McGhee any constitutional protections.

---

[70] *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue.") (citing *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999); *Ellis v. Collins*, 956 F.2d 76, 79 (5th Cir. 1992)).

a.    Background and State Court Rulings

On February 3, 2014, the state trial court asked questions of qualifications to the first venire panel regarding citizenship, residency, age, and felony criminal background.[71]    The court also questioned the panel about their knowledge or relationship with McGhee, the attorneys, and witnesses.[72]    The court asked questions of panelist Mejia who indicated that he remembered the assistant district attorney from a prior murder trial in which he was a juror.[73]    The court specifically asked Mejia if this would influence his decision in this murder trial where McGhee faced life in prison.    Mejia indicated that he would be able to vote not guilty if the state failed to meet its burden of proof beyond a reasonable doubt.[74]

The court asked similar questions of panelist Newman who was high school and Facebook friends with the district attorney's paralegal.[75]    He indicated this would not influence his decisions in the case.[76]    The court also specifically questioned panelist Gantt who vaguely recalled hearing about the double murder for which McGhee was being tried.[77]    She too had formed no opinions about the case.[78]

The court went on to question panelists Newman who was familiar with two of the officers to be called as witnesses by the prosecution and also had a relative in law enforcement.[79]    She indicated that she would not be influenced by her knowledge of these officers.[80]    The court

---

[71] St. R. Vol. 3 of 6, at 483, 499-500, Trial Tr., Vol. I, 2/3/14.
[72] *Id*. at 501-02.
[73] *Id*. at 502-04.
[74] *Id*. at 503-04.
[75] *Id*. at 504-05.
[76] *Id*. at 505.
[77] *Id*. at 506.
[78] *Id*.
[79] *Id*. at 508, 510.
[80] *Id*. at 509, 510.

questioned other panelists who had relatives in law enforcement.[81]    Both indicated that this would not influence their verdict.[82]

The court also released on juror whose daughter had been murdered.[83]    He questioned the remaining panelists and specifically questioned panelist Mayne about any influence his cousin's murder would have on his verdict.[84]    Mayne indicated that it would not and that he could give McGhee the benefit of any reasonable doubt.

The court also inquired into the jury service of other panelists, besides panelist Mejia, and specifically questioned panelist Condon who served on a murder trial, panelist Marsiglia who served in a rape case, and panelist Rivere who served in a drug/weapons trial.[85]

Following this questioning, the court explained to the panelists the law and definitions of first degree murder, second degree murder, and manslaughter, and elicited responses of understanding from the panel as whole.[86]    The court also explained specific intent to kill and the crime of aggravated burglary, as a possible underlying felony for the murders.[87]    The jurors had no questions about these terms or the mandatory sentences for first and second degree murder.[88]

The court then asked the panel: "Anything going on in your lives that you haven't told me about already such that you can't be a fair and impartial juror if selected, for the rest of this week? Anything going on?"    There were no responses other than one panelist's complaint about sitting in a chair all day.[89]

---

[81] *Id*. at 510-12.
[82] *Id*. at 511, 512.
[83] *Id*. at 494, 497-98.
[84] *Id*. at 512-13.
[85] *Id*. at 519-25.
[86] *Id*. at 526, 528.
[87] *Id*. at 527.
[88] *Id*. at 528-29.
[89] *Id*. at 529-30.

The prosecutor conducted *voir dire* by explaining his burden to prove the elements of the crimes defined by the court and seeking input from jurors as to their understanding of the specific elements and burdens.[90]   The state trial court interrupted the prosecutor's presentation once to correctly identify a panelist and ask if anyone had questions on the State's burden.[91]

Before McGhee's counsel began his *voir dire* examination, the state trial court advised the jury panel that they would be instructed on the law to be applied in the case at the end of trial, and the panelists agreed to apply the law as the court would instruct.[92]   The court briefly explained the presumption of innocence and the state's burden of proof beyond a reasonable doubt.   The panelists again indicated their understanding.[93]   The court then had McGhee's counsel read off the list of potential defense witnesses, and the panelists did not indicate knowing any of them.[94]

McGhee's counsel asked if any panelists would have a problem viewing photographs or testimony about the means and manner of death.[95]   He then asked:

> And I know [the prosecutor] asked you this.   In terms of time, we anticipate that we're going to be done by the end of the week.   Does anybody have any pressing engagement that would prevent you from giving this trial your full attention? Anybody?[96]

The state trial court judge replied, "I've asked that.   Let's not be repetitive."[97]   The court then inquired if any panelist had a different response.   Panelist Mejia responded that his answer was

---

[90] *Id*. at 531-56; *id*. at 537 (specific intent); *id*. at 538-40 (distinction between first and second degree murder as to each victim); *id*. at 540-45 (types of evidence); *id*. at 545-50 (credibility); *id*. at 550, 552-54 (reasonable doubt); *Id*. at 554-56 (presumption of innocence).
[91] *Id*. at 554.
[92] *Id*. at 557.
[93] *Id*. at 557-58.
[94] *Id*. at 558.
[95] *Id*. at 560.
[96] *Id*.
[97] *Id*.

not different but he wanted to clarify that he was the sole employee for his company and would be responsible to respond should anything come up.[98]

Defense counsel then asked the panel if they knew his job at trial.  Panelist Alessi responded, "prove the innocence of your client."[99]  Rather than respond to that juror, counsel requested the microphone be handed to another panelist, Mayne.  When he did so, the court interrupted:  "Counsel, your question should be directed as to whether or not the jury could be fair and impartial."[100]  The court went on to instruct the jury:

> Let me advise you, he doesn't have to [do] anything.  He does not have to prove the innocence of his client.  The State has to prove the guilt of his client.  And it's sort of one of those questions testing you to see how much you know about the law.
> He can sit there and do nothing.  He doesn't have to ask any questions, doesn't have to present any defense, doesn't have to do anything, and that's a rule of law which is my responsibility to inform you, and I have done that.
> I've told you that the defendant is entitled to the presumption of innocence.  Doesn't have to present any evidence, doesn't have to call any witnesses.   Do you understand that, Mr. Alessi?[101]

Panelist Alesi replied, "[y]es," as did all of the other panelists.[102]  McGhee's counsel then reiterated that he did not have to do anything, and confirmed with the panel that the State had to convince them beyond a reasonable doubt.[103]

When counsel tried to define reasonable doubt, referencing statements by the prosecutor during his *voir dire*, the state trial court interjected, "I've instructed them what reasonable doubt is.   Do you have any questions as to whether or not they can be fair and impartial?"[104]  The court declined defense counsel's request to approach the bench.

---

[98] *Id*.
[99] *Id*. at 560-61.
[100] *Id*.
[101] *Id*. at 562.
[102] *Id*.
[103] *Id*. at 562-63.
[104] *Id*. at 563.

Defense counsel continued, nevertheless, repeating in part the prosecutor's discussion about reasonable doubt.   Defense counsel also discussed with the jury a defendant's choice not to testify, and questioned panelist Blanchard directly about whether he would hold the decision to not testify against McGhee.[105]   After the panelist responded that it would be beneficial to hear from McGhee, the state trial court interrupted:

> Once again, let me intervene and instruct the jury that the defendant is not required to testify and is not required to present any evidence on his own behalf whatsoever.   This is a Fifth Amendment privilege and you should not hold that against him.[106]

After ascertaining that the panelist and the others understood the law on the right to not testify, the court stated, "Counsel, I hate to keep interrupting you but I know where this can go and I'm trying to intervene before it gets there."[107]

McGhee's counsel proceeded to question the panel about use and influence of social media and the news, including what may have been heard or read about the murders.[108]   He discussed with the panelists the concept of being wrongly accused.[109]   Counsel directly questioned panelist Alessi about the fact that Alessi attended the same local school as the state trial judge.[110]   He also questioned other panelists who had indicated relationships with police officers.[111]   He asked if any panelist had problems with lawyers, defense lawyers in particular, and no one did.[112]

---

[105] *Id*. at 563-64.
[106] *Id*. at 564.   The state trial court went on to give examples of why a defendant may choose to not testify. As discussed previously, although McGhee asserted that these comments tainted the jury, McGhee did not exhaust state court review of that claim, and the claims was already dismissed.   ECF No. 11.
[107] *Id*. at 565.
[108] *Id*. at 566-571.   The state trial court interrupted counsel's social media questions to inquire about Pinterest.   *Id*. at 567.
[109] *Id*. at 573.
[110] *Id*. at 573-74.
[111] *Id*. at 574-76.
[112] *Id*. at 576.

When defense counsel finished, the court explained to the panel that the lawyers would have a few minutes to meeting with him at the bench.   The court also stated:

> I just want to say that I did interrupted [sic] counsel several times.   It was nothing personal.   But there are certain areas that when we get into I like to immediately instruct the jury and inform them of what the law is.   Sometimes we can get into difficulties and problems.   But that in no way reflects upon counsel or his questions, I want you to know that.[113]

Nine jurors were preliminarily accepted from the first panel, including panelists Blanchard, Gantt, Alessi, Rivere, and Marsiglia.[114]   Panelists Gantt, Marsiglia, and Frazier were later back-stricken by the defense during selection from the second panel.[115]

Questioning of the second panel was accomplished in a similar manner.[116]   The state trial court asked the panel preliminary questions geared towards impartiality and understanding of the basic law applicable, and released for cause several panelists who were related to the victim or otherwise unable to serve.[117]   Before allowing the prosecutor to ask questions, the court stated, "I'm going to enter my admonition now.   Please don't cover territory I've already covered."   The court did not interrupt or interject during questioning by the prosecutor or defense counsel.[118]   Five jurors were selected from the second panel, leaving three more to be selected to complete the twelve person jury with two alternates.[119]

At the end of the first day of *voir dire*, McGhee's counsel urged several motions, including one for mistrial based on the multiple interruptions during *voir dire* of the first panel.   Counsel

---

[113] *Id*. at 576-77.
[114] *Id*. at 582.
[115] *Id*. at 653, 655, 656, 657-658.
[116] *Id*. at 589-657.
[117] *Id*. at 604-05 (panelist knew the male victim); *id*. at 605-06 (panelist related to the female victim); *id*. at 619 (panelist's husband was brutally beaten in an armed robbery and suffers PTSD).
[118] After defense counsel ended questioning about social media and fully ended *voir dire*, the court asked him what Pinterest is, and counsel responded.   *Id*. at 651.
[119] *Id*. at 657.

argued that, while he understood the court's point and curative instruction, the court interrupted the flow of *voir dire* and cast him in a negative light by admonishing him three times without doing so when the State was repetitive.[120]    The court denied the motion finding that the judge had the duty to instruct the jury on questions of law and the lawyers were to address fairness and impartiality.[121]    The court noted that the interruptions came when counsel addressed areas already covered by the court and more particularly, areas of law that the court felt needed to be clarified.[122]

Questioning of the third panel was accomplished the next day, February 4, 2014, and was done in a similar manner.[123]    The court did not interrupt the prosecutor's *voir dire*.    During defense counsel's *voir dire*, counsel joked with a panelist about school rivalry between LSU and Tulane University when he asked if the panelist would hold it against him knowing that he went Tulane Law School.[124]    The panelist responded, "[s]urely not," and the state trial court added, "When did Tulane get a law school?"    The court then stated, "I'm sorry.    It was a joke."[125]

After the final jurors were chosen,[126] McGhee's counsel asked the state trial court to reconsider the motion for mistrial citing a Louisiana Supreme Court case that prohibited limitation of defense questions during *voir dire* as to whether prospective jurors would accept the law as given.[127]    The state trial court denied the motion to reconsider distinguishing that the case cited was a capital case involving rehabilitation of potential jurors with regard to their opposition to capital punishment.[128]    The court also held that its comments were not limitations and instead were

---

[120]  *Id*. at 668-69.
[121]  *Id*. at 669-70.
[122]  *Id*. at 669.
[123]  *Id*., at 683-722, Trial Tr., Vol. II, 2/4/14.
[124]  *Id*. at 726.
[125]  *Id*. at 726-27.
[126]  St. R. Vol. 4 of 6, at 743, Trial Tr., Vol. II, 2/4/14.
[127]  *Id*. at 745-46 (citing *State v. Hall*, 616 So. 2d 664 (La. 1993)).
[128]  *Id*. at 747-48.

"*sua sponte* instruction on law to immediately clear up any misimpressions that the jurors had about the law."[129]   The court also noted that it appropriately curtailed repetitive questions in the interest of judicial economy and that counsel was given a full and fair opportunity for *voir dire*.[130]

After McGhee's conviction, his appointed counsel asserted this claim on direct appeal to the Louisiana First Circuit.   The Louisiana First Circuit denied relief, finding that McGhee was afforded a full and fair examination of the prospective jurors and was not prejudiced by or significantly limited during *voir dire* examination.[131]   Based on these findings, the court also resolved that the state trial court did not abuse its discretion when it denied the motions for mistrial.[132]   The court also concluded that McGhee was not deprived of any reasonable expectation of a fair trial.[133]   The Louisiana Supreme Court denied McGhee's subsequent writ application without stated reasons.[134]   Therefore, the Louisiana First Circuit provided the last reasoned state court opinion on the issue.[135]

### b.   Federal Law

McGhee challenges the state trial court's denial of his counsel's motions for mistrial following the state trial court's interruptions and limitation of counsel's *voir dire* questioning. However, it is not the province of this court to review the state trial court's denial of the mistrial motions or the state appellate court's finding that the denial was not error.[136]   A federal court does

---

[129] *Id*. at 747.

[130] *Id*. at 747-48.

[131] *McGhee*, 2015 WL 996370, at *1-4; St. R. Vol. 5 of 6, 1st Cir. Opinion, 2014-KA-1359, at 3-9, 3/6/15.

[132] *McGhee*, 2015 WL 996370, at *4; St. R. Vol. 5 of 6, 1st Cir. Opinion, 2014-KA-1359, at 9, 3/6/15.

[133] *McGhee*, 2015 WL 996370, at *4; St. R. Vol. 5 of 6, 1st Cir. Opinion, 2014-KA-1359, at 9, 3/6/15.

[134] *State ex. rel. McGhee*, 206 So. 3d at 876; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2015-KH-0699, 5/2/16.

[135] *See Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.").

[136] *See Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension).

"not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under

state law."[137]    The United States Fifth Circuit has specifically addressed alleged state court error

involving the denial of mistrials:

> Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance.[138]

This federal habeas court will thus not revisit the state courts' determination that Louisiana law

did not require the granting of a mistrial.

Instead, the court's habeas review is limited to review of errors that violated the Due

Process Clause and rendered the criminal proceedings fundamentally unfair.[139]    The question of

fundamental fairness at trial under the Due Process Clause presents a mixed question of law and

fact.[140]    The court must determine whether the denial of relief by the state courts was contrary to

or an unreasonable application of federal law.

The Sixth Amendment guarantees a criminal defendant a trial by an impartial jury.[141]    The

Constitution, however, "does not dictate a catechism for *voir dire*, but only that the defendant be

afforded an impartial jury."[142]    An adequate *voir dire* to identify unqualified jurors is integral to

that right.[143]    Neither due process nor the Sixth Amendment entitles a defendant to ask prospective

---

[137] *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

[138] *Smith v. Whitley*, 18 F.3d 937, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) (unpub.).

[139] *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial court's error was so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

[140] *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Martinez-Perez v. Dretke*, 172 F. App'x 76, 80 (5th Cir. 2006).

[141] *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992).

[142] *Id.* at 729.

[143] *Id.*; *Dennis v. Mitchell*, 354 F.3d 511, 523-24 (6th Cir. 2003).

jurors every question that might prove helpful.[144]   The trial court's vantage point is a superior

perspective to assess which inquiries will be fruitful in uncovering bias and which will not be.[145]

A federal habeas court is limited to determining whether the state trial court's failure to ask certain

questions in *voir dire* rendered the trial fundamentally unfair after affording due deference to the

trial court.[146]   "[T]he trial court retains great latitude in deciding what questions should be asked

on *voir dire*."[147]

c.   <u>Discussion</u>

As determined by the state courts, McGhee's counsel had ample opportunity to question

the prospective jurors about their impartiality and attributes of fairness, including their

relationships with participants in the trial, in law enforcement, and their use of social media and

news sources.   As outlined above, and contrary to McGhee's assertions, the state trial court did

not prevent defense counsel from questioning the jurors individually or as a whole about the State's

burden of proof, reasonable doubt, or the right to not testify.   As was made clear by the state trial

court, when defense counsel broached the topics, it was clear that the panelists misunderstood the

law on those points and the court stepped in to clarify the law and redirect the jurors.   The court

made clear that the State had the burden of proving guilt beyond a reasonable doubt, the defense

did not have to prove innocence, nor did McGhee have to testify.   Following the court's

clarifications of the law, the jurors indicated their understanding and ability to apply the law.

There was no need for defense counsel to repeat the questions already posed by the court.

---

[144] *Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991).

[145] *See Morgan*, 504 U.S. at 729 ("It is true that '[v]oir dire is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'") (quoting *Ristaino v. Ross*, 424 U.S. 589, 594 (1976)).

[146] *Id*. at 425-26; *Patton v. Yount*, 467 U.S. 1025, 1036-37 & n.12 (1984) (The determination of whether a juror can be impartial "is a determination to which habeas courts owe special deference.").

[147] *Mu'Min*, 500 U.S. at 424; *Rosales-Lopez v. United States*, 451 U.S. 182, 189-90 (1981).

McGhee's counsel also was not prevented from asking, and in fact asked, questions of the prospective jurors to determine their ability to sit as fair and impartial jurors in light of the State's burden and without McGhee's testimony.   The trial court's only request to counsel for the State and McGhee was that they not be repetitive and focus their questions on the fairness and impartiality of the panel.

No matter who asked the questions, the information needed to evaluate juror fairness and impartiality was elicited from each of the panelists and available for all parties to evaluate.   The state appellate court confirmed that McGhee was provided with a more than adequate opportunity to empanel a fair and impartial jury.   This latter point is exactly what is required by due process and the Supreme Court precedent cited above.

McGhee, therefore, has not established that the state courts unfairly limited *voir dire* examination or denied him the opportunity to empanel a fair and impartial jury in violation of his due process rights.   The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.

### 4.  Claim 3:  Sufficient Evidence

McGhee alleges that the evidence was insufficient to support the verdict because the State relied on circumstantial evidence and an unsubstantiated voice recognition by the victim's child, T.M.   McGhee argues that the identification was never tested or proven reliable.   He also claims that his stepdaughter Nicole Flippen's statement that he confessed to her that he committed the murder should have been rejected as not credible.

       a.     <u>State Court Rulings</u>

McGhee first asserted this claim in his 2017 application for post-conviction relief in the state trial court.[148]   The court barred post-conviction review of the claim under LA. CODE CRIM. PROC. art 930.4(C) for McGhee's inexcusable failure to assert the claim on direct appeal.[149]   On September 17, 2019, the Louisiana First Circuit denied McGhee's related writ application without stated reasons.[150]   This ruling presumably defers to the procedural bar imposed by the state trial court.[151]   However, as discussed previously, the Louisiana Supreme Court provided the last reasoned decision which held that McGhee failed to meet his burden of proof on this claim as required by LA. CODE CRIM. PROC. art. 930.2.[152]   This was a decision on the merits of the claim.[153]

       b.     <u>Federal Law</u>

A federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[154]   Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.[155]

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.[156]   A federal habeas court is not authorized to substitute its interpretation of the

---

[148] St. R. Vol. 5 of 6, Application for Post-Conviction Relief, Memorandum at 6-9, 2/2/17 (dated 1/30/17).
[149] *Id.*, Trial Court Order, 1/30/19.
[150] *State v. McGhee*, No. 2019-KW-0715, 2019 WL 4447707, at *1 (La. App. 1st Cir. Sep. 17, 2019); St. R. Vol. 5 of 6, 1st Cir. Order, 2019-KW-0715, 9/17/19.
[151] *See Ylst*, 501 U.S. at 802.
[152] *McGhee*, 299 So. 3d at 51; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2019-KH-01712, 7/24/20.
[153] *Darby*, 2020 WL 5468953, at *7.
[154] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).
[155] *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n.16).
[156] *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009)

evidence or its view of the credibility of witnesses in place of the fact-finder.[157]   Thus, review of

the sufficiency of the evidence does not include review of the weight of the evidence or the

credibility of the witnesses, because those determinations are the exclusive province of the jury.[158]

All credibility choices and conflicting inferences must be resolved in favor of the verdict.[159]   In

addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt

or innocence determination, but rather whether it made a rational decision to convict or acquit.'"[160]

A claim of insufficient evidence presents a mixed question of law and fact.[161]   Therefore,

this court must examine whether the state courts' denial of relief was contrary to or an unreasonable

application of United States Supreme Court precedent.

        c.    <u>Discussion</u>

McGhee was charged with and convicted of the first degree murder of the two victims, his

ex-girlfriend Tamica Muse and her boyfriend Karum Smith.   Under LA. REV. STAT. ANN.

§ 14:30(A), Louisiana law defines first degree murder as the killing of a human being when the

offender has a specific intent to kill or to inflict great bodily harm under several scenarios.   In this

case, the theories posed by the State were that McGhee had specific intent to kill or to inflict great

---

(*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).

[157] *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

[158] *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

[159] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

[160] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

[161] *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).

bodily harm upon more than one victim (§ 14:30(A)(3)) and/or during the perpetration or attempted perpetration of an armed robbery (§ 14:30(A)(1)).[162]

Under Louisiana law, specific criminal intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[163]   Specific intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.[164]

McGhee does not specifically contest the sufficiency of the proof related to these essential statutory elements of the offense of first degree murder.   Instead, McGhee contests the sufficiency of the voice identification made by T.M., Muse's minor daughter, which was used to link him to the crime.   Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as the perpetrator.[165]   Where the key issue is identification, the State is required to negate any reasonable probability of misidentification.[166]   However, a positive identification by only one witness is sufficient to support a conviction.[167]

Louisiana courts have held that voice identification is reliable and sufficient evidence of a perpetrator's identity.[168]   The courts consider voice identification appropriate without more when

---

[162] *See*, *e.g.*, St. R. Vol. 3 of 6, at 526-27, Trial Tr., 2/3/14 (state trial court's definition of the relevant statutory factors).
[163] LA. REV. STAT. ANN. § 14:10(1).
[164] *State v. Tate*, 851 So. 2d 921, 930 (La. 5/20/2003) (citing *State v. Brooks*, 505 So .2d 714, 717 (La. 1987)); *State v. Cummings*, 771 So. 2d 874, 876 (La. App. 1st Cir. 2000).
[165] *State v. Draughn*, 950 So. 2d 583, 593 (La. 1/17/2007), *cert. denied*, 552 U.S. 1012 (2007); *State v. Forrest*, 231 So. 3d 865, 870 (La. App. 1st Cir. 2017); *State v. Thomas*, 192 So. 3d 291, 303 (La. App. 5th Cir. 2016); *State v. Ingram*, 888 So. 2d 923, 926 (La. App. 5th Cir. 2004).
[166] *Draughn*, 950 So. 2d at 593.
[167] *State v. Williams*, 3 So. 3d 526, 529 (La. App. 5th Cir. 2008).
[168] *State in Interest of D.S.*, 83 So. 3d 1131, 1137 (La. App. 5th Cir. 2011) (citing *State v. Steward*, 975 So. 2d 829, 835 (La. App. 2d Cir. 2008).

the record holds sufficient foundation for the identification including the witness's "personal factual observations."[169]

> Voice identification is a problem of authentication rather than a problem of a lay witness's competency to identify a voice. Sufficient authentication can be established by circumstantial evidence pointing to the unseen speaker's identity or by testimony of a witness familiar with the speaker's voice. Authentication based on familiarity with the speaker's voice can be gained subsequent to the communication.[170]

Challenges to the accuracy of witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and a reviewing court cannot reevaluate that credibility determination.[171]

T.M. was 16 years old when she testified at McGhee's trial.[172] T.M. had known McGhee, her mother's former boyfriend, for about six years, or maybe less, when he and her mother dated and occasionally lived together.[173] She and her mother had lived on Mallard Drive in Hammond, where the murders occurred, since January of 2012.[174] McGhee had also lived there too until a week or two before the shooting.[175]

---

[169] *State v. Mitchell*, 818 So. 2d 807, 817 (La. App. 2d Cir. 2002).

[170] *State v. Cox*, 124 So. 3d 523, 529 (La. App. 3d Cir. 2013) (quoting *Mitchell*, 818 So. 2d at 817) (citations omitted).

[171] *State v. Thomas*, 13 So. 3d 603, 607 (La. App. 5th Cir. 2008); *see also Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1985) (habeas courts should defer to the jury's credibility determinations and justifiable inferences of fact.) (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)).

[172] St. R. Vol. 4 of 6, at 854, Trial Tr., Vol. II, 2/4/14 (testimony of T.M.).

[173] *Id*. at 854, 864, 863-64.

[174] *Id*. at 855.

[175] *Id*. at 865.

The day before the shooting, T.M., her mother, and Smith spoke with the girlfriend of McGhee's nephew and her young daughter, Bree, at a grocery store in Amite, Louisiana.[176]   Bree asked T.M. who Smith was, and T.M. told her he was her mother's boyfriend.[177]

That night, T.M. went to her room and eventually fell asleep.[178]   At some point, T.M. was awakened by the sound of a familiar male voice in the house.[179]   She knew the voice to be that of McGhee, whom she identified in court.[180]   He yelled, "Mother F----,"[181] and then she heard shots. After a minute, she heard the front door slam but she stayed in her room.   She eventually opened her bedroom door and yelled for her mother, but she did not reply.   T.M. then went to her mother's bedroom and saw her mother and Smith.   She explained that her mother was hunched over and Smith was bleeding from the mouth, but rolling eyes.   She took this to mean she should get out of the room and go to safety.   T.M. took her mother's phone off of the dresser and went into her bedroom closet.[182]   She used one phone to call 9-1-1 and then the other to call her father.[183]

T.M. recalled telling her father that McGhee was the shooter.[184]   She explained that she was positive it was McGhee because she had prior opportunities to hear him yell and curse when he lived with them.[185]

The trial record contained evidence of a foundation for T.M.'s identification of McGhee's voice.   She was personally familiar with his voice because she lived in the same house with

---

[176] *Id*. at 856.
[177] *Id*. at 856-57.
[178] *Id*. at 858.
[179] *Id*.
[180] *Id*.
[181] *Id*. at 859.
[182] *Id*. at 860.
[183] *Id*.
[184] *Id*. at 862.
[185] *Id*.

McGhee over several years and had past encounters when he yelled and cursed.   Under Louisiana law, this was sufficient authentication for a jury to find her testimony and identification credible.

In addition to T.M.'s testimony, the jury also heard testimony and viewed video and pictorial evidence of the scene from which a reasonable juror could determine that the statutory elements of murder had been established.[186]   Before 6:00 a.m. on April 5, 2012, Hammond Police Department officers were dispatched to the scene of a shooting on Mallard Drive.[187]   The call was received from T.M. who told the operator that she heard a shot from her mother's room and she was hiding in her closet or bathroom.[188]   When officers arrived, the front door was unlocked with no sign of forced entry.[189]   They located two victims in one bedroom, both with faint pulses and Smith was gasping for air.[190]   They also located T.M. hiding in her room, and she was in a "catatonic shock," "scared to death; shaking, crying, didn't want to speak."[191]   At some point, T.M. told police that she heard the voice of the shooter and it was McGhee.[192]

By the time other emergency and medical personnel arrived, Muse no longer had a pulse, and Smith was taken away for additional care.[193]   A search of the apartment, the building, and the surrounding area did not locate a weapon or reveal evidence of a forced entry or obvious theft.[194]

---

[186] The crime lab's video and dozens of photographs were reviewed and shown to the jury.   *Id*. at 808-09, 810-26 (testimony of Mindy Buratt, Louisiana State Police Crime Lab employee).

[187] *Id*. at 790 (testimony of Officer Daniel Boudreaux).

[188] *Id*. at 791 (Officer Boudreaux).

[189] *Id*. at 792 (Officer Boudreaux).

[190] *Id*. at 793 (Officer Boudreaux).

[191] *Id*. at 794, 798 (Officer Boudreaux).

[192] *Id*. at 927, Trial Tr., Vol. III, 2/5/14 (testimony of Det. George Bergeron); *id*. at 957-58 (testimony of Det. Edward Bergeron).

[193] *Id*. at 795, Trial Tr., Vol. II, 2/4/14 (Officer Boudreaux).

[194] *Id*. at 797-99 (Officer Boudreaux).

Multiple cartridge casings, identified as Tulammo .380ACP, were recovered in the bedroom where the shooting occurred.[195]   A bullet was also recovered from the pillow under Muse's head.[196]

Muse had been shot twice in the face; one bullet entered her left cheek and exited out of the back of her neck, and one bullet entered near her nose, perforated her skull and brain, and stopped in her brain stem. [197]   The latter bullet was the cause of her death.[198]   Smith died as the result of a gunshot wound through his upper lip that severed the right carotid artery and entered his spinal column.[199]

The jury also heard testimony and reviewed pictures of the mailbox and mail at Muse's apartment that appeared to have been gone through and strewn about on the wet ground.[200] Muse's Mercury van was recovered from McGhee's possession, and it contained potential evidence that was seized and tested.[201]   In the van, the crime lab investigator located a duffle bag with men's clothing, a letter addressed to McGhee at the Mallard Drive address, a cell phone, and registration for a phone in McGhee's name.[202]

During the investigation, T.M. and her father, Patrick Matthews, spoke with officers at the Hammond detective bureau.[203]   Matthews volunteered that he had McGhee's cell phone number if the police wanted to find McGhee.[204]   Matthews called McGhee and asked him to turn himself

---

[195] *Id*. at 827-29 (Buratt).
[196] *Id*. at 829 (Buratt).
[197] *Id*. at 898-99, 901-02 Trial Tr., Vol. III, 2/5/14 (testimony of Dr. Fraser Mackenzie).
[198] *Id*. at 901-03.
[199] *Id*. at 906, 908-09.
[200] *Id*. at 820-22, Trial Tr., Vol. II, 2/4/14 (Buratt).
[201] *Id*. at 821, 823 (Buratt).
[202] *Id*. at 823-26 (Buratt).
[203] *Id*. at 875 (testimony of Patrick Matthews); *id*. at 958, Trial Tr., Vol. III, 2/5/14 (Det. E. Bergeron).
[204] *Id*. at 875, Trial Tr., Vol. II, 2/4/14 (Matthews).

in to police.[205]   McGhee denied involvement and eventually hung up when a detective took the phone from Matthews.[206]

The Muse family provided the officers with a description of the van McGhee had taken.[207] With the assistance of Sprint, officers were able to track McGhee's cell phone as it traveled westbound on Interstate 12 around 8:00 a.m. until it stopped at a house in Baton Rouge.[208]   The house belonged to McGhee's stepdaughter, Nicole Flippen.[209]   McGhee had called that morning to tell her he was on his way to her house.   When he arrived, he told Flippen that if anyone asked, he needed her to say that he was with her the night before.[210]   Flippen asked him why and what he had done, and then jokingly asked, "What did you do, kill T[amica]?"[211]   McGhee did not respond verbally at first but eventually told her, "I did it," "I shot 'em," and moving his hand said, "Pow."[212]   Flippen explained that she initially told police that she called McGhee the night before to come stay with her, but corrected her statement when police told her she could go to jail.[213]   The police also searched her phone and found she had not called McGhee the night before the murders.[214]

While pursuing warrants, a team of officers from Hammond and East Baton Rouge Parish Sheriff's Office located Muse's van and conducted surveillance of Flippen's house.[215]   During that time, officers saw McGhee leave the house in the maroon and grey van, and the officers

---

[205] *Id*. (Matthews); *id*. at 974, Trial Tr., Vol. III, 2/5/14 (Det. E. Bergeron).
[206] *Id*. at 875, Trial Tr., Vol. II, 2/4/14 (Matthews).
[207] *Id*. at 959, Trial Tr., Vol. III, 2/5/14 (Det. E. Bergeron).
[208] *Id*. at 929-30 (Det. G. Bergeron); *id*. at 958-60 (Det. E. Bergeron).
[209] *Id*. at 1005 (testimony of Nicole Flippen).
[210] *Id*. at 1005-06.
[211] *Id*. at 1006-07.
[212] *Id*. at 1007.
[213] *Id*. at 1007-08.
[214] *Id*. at 1008.
[215] *Id*. at 932 (Det. G. Bergeron); *id*. at 961 (Det. E. Bergeron); *id*. at 981 (testimony of Det. Tyler Kennison).

pursued it with lights and sirens for about three miles until McGhee crashed at an intersection.[216] East Baton Rouge Sheriff's deputies had to break the driver's window to pull McGhee out.[217]

McGhee was arrested and the search warrants were executed.[218]   McGhee was read his *Miranda* warnings and interviewed by Hammond detectives while still in Baton Rouge.[219]   His video recorded statement was played for the jury.[220]

The parties also stipulated before the jury that the crime lab was unable to develop any fingerprints from the crime scene.[221]   They also stipulated as to the crime lab DNA reports which indicate that the swab samples taken from the scene, the mail, and the van provided no match to McGhee.[222]   In addition, they stipulated that the ballistics reports showed that the three casings recovered at the scene were fired from the same weapon, but no weapon was recovered to complete ballistics testing.[223]

The jury, therefore, received evidence that identified McGhee as the person who yelled profanity in the home at the time the shots being fired.   The victims died as a result of the gunshot wounds to their faces/heads, tending to demonstrate an intent to kill or cause great bodily harm. Within hours of the shooting, McGhee was found in possession of Muse's van that had been at her apartment.   McGhee told his stepdaughter that he shot Muse and Smith.

The lack of physical evidence (*i.e.* fingerprints or DNA) or eyewitnesses to the shootings does not prevent the jury from concluding that McGhee was guilty beyond a reasonable doubt. McGhee's challenge to T.M.'s ability to identify his voice goes to the weight of the evidence and

---

[216] *Id*. at 932-33 (Det. G. Bergeron).
[217] *Id*. at 933.
[218] *Id*. at 961-62 (Det. E. Bergeron); *id*. at 982-84 (Det. Kennison).
[219] *Id*. at 962-66 (Det. E. Bergeron); *id*. at 990 (testimony of Det. Michael Mercante).
[220] *Id*. at 972 (Det. E. Bergeron).
[221] *Id*. at 919, Trial Tr., Vol. III, 2/5/14 (first stipulation).
[222] *Id*. at 920 (second stipulation).
[223] *Id*. at 920-21 (third stipulation).

her credibility, both of which are matters left to the jury's discretion and for which this court cannot substitute its own judgment on habeas review.

Viewing the evidence in the light most favorable to the prosecution in accordance with *Jackson*, the State presented sufficient evidence for a reasonable jury to conclude that the identification and each element of first degree murder was established.   Therefore, the state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.

### 5.   Claim 1(b), 4 and 5:   Effective Assistance of Counsel

McGhee claims that his counsel was ineffective when trial counsel failed to challenge the non-unanimous verdict at trial and his appellate counsel failed to challenge it on appeal.   He also asserts that, despite the transcript of his waiver, his trial counsel denied him the right to testify in violation of his constitutional rights.   He also claims that his trial counsel was deficient in failing to challenge the reliability of T.M.'s voice recognition identification and have the 9-1-1 recording analyzed for background noise because T.M. was supposedly using two cell phones and had her father on the second phone.   McGhee further claims that trial counsel failed to investigate T.M.'s claim that McGhee lived with her and her mother for about four years, which was untrue.

### a.    State Court Rulings

McGhee asserted each of these arguments in his 2017 application for post-conviction relief.[224]   The state trial court denied as meritless the ineffective assistance of counsel claims related to the non-unanimous verdict and barred review of the others under La. Code Crim. Proc. art 930.4(C) for McGhee's inexcusable failure to assert the claim on direct appeal.[225]   On

---

[224] St. R. Vol. 5 of 6, Application for Post-Conviction Relief, Memorandum at 6-9, 2/2/17 (dated 1/30/17).
[225] *Id*., Trial Court Order, 1/30/19.

September 17, 2019, the Louisiana First Circuit denied McGhee's related writ application without stated reasons.[226]   The Louisiana Supreme Court provided the last reasoned decision which held that McGhee failed to show that he received ineffective assistance of counsel under *Strickland*.[227]

      b.     AEDPA Standards and *Strickland*

The issue of ineffective assistance of counsel is a mixed question of law and fact.[228]   Under the AEDPA standards outlined previously, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

In *Strickland*, relied on by the Louisiana Supreme Court, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[229]   The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[230]   Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[231]   A court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of a claim based solely on a petitioner's failure to meet either prong of the test.[232] A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not

---

[226] *State v. McGhee*, No. 2019-KW-0715, 2019 WL 4447707, at *1 (La. App. 1st Cir. Sep. 17, 2019); St. R. Vol. 5 of 6, 1st Cir. Order, 2019-KW-0715, 9/17/19.

[227] *McGhee*, 299 So. 3d at 51; St. R. Vol. 6 of 6, La. Sup. Ct. Order, 2019-KH-01712, 7/24/20.

[228] *Strickland*, 466 U.S. at 698; *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox*, 609 F.3d at 789.

[229] *Strickland*, 466 U.S. at 697.

[230] *Id.* at 687-88.

[231] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[232] *Kimler*, 167 F.3d at 893.

altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[233]

On habeas review, the Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[234]  "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one."[235]  The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[236]

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by a petitioner.[237]  "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[238]  A federal habeas court must eliminate the distorting effects of hindsight, reconstruct the circumstances of counsel's challenged conduct, and evaluate the conduct from counsel's perspective at the time of trial.[239]  Tactical decisions, when supported by the circumstances, are objectively reasonable and not deficient performance.[240]

---

[233] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[234] *Harrington*, 562 U.S. at 105.

[235] *Id.*

[236] *Strickland*, 466 U.S. at 690.

[237] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[238] *Harrington*, 562 U.S. at 105.

[239] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000).

[240] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997), and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

c.    Claim 1(b): Challenge the Non-Unanimous Verdict

McGhee claims that his trial and appellate counsel were ineffective when they each failed to challenge the constitutionality of the non-unanimous verdict in his case. The State opposed McGhee's challenge to the constitutionality of his verdict but did not specifically address his claim that his counsel should have voiced challenges at trial and on appeal. Nevertheless, for the reasons explained previously regarding his non-unanimous verdict, counsel had no legal basis to have challenged Louisiana's non-unanimous verdict rule at the time of McGhee's conviction.

As discussed previously, a non-unanimous verdict in Louisiana was not unlawful or unconstitutional under the Supreme Court law in place at the time of his conviction. His trial counsel had no precedent to support a successful challenge at that time. His counsel was not ineffective for failing to urge a frivolous objection or legally meritless claim.[241]

McGhee also contends that his appellate counsel's failure to assert this issue on direct appeal was ineffective representation. The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel.[242] "[T]the applicable test to be applied in assessing such a claim is instead whether the issue ignored by appellate counsel was 'clearly stronger' than the issues actually presented on appeal."[243] Thus, to prevail on a claim that appellate counsel was ineffective, a petitioner must show that his appellate counsel unreasonably

---

[241] *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

[242] *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (criminal defendants are entitled to effective assistance of counsel in their first appeal of right).

[243] *Matthews v. Cain*, 337 F. Supp. 3d 687, 712 (E.D. La. Aug. 29, 2018) (order adopting attached report and recommendation) (citing *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007), and *Smith*, 528 U.S. at 288).

failed to assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.[244]

Just like his trial counsel, McGhee's appellate counsel was not ineffective for failing to assert a frivolous claim. At the time, there was no legal precedent holding the non-unanimous verdict unconstitutional in Louisiana. Therefore, his appellate counsel did not have a nonfrivolous claim to assert on this basis. McGhee also cannot show that a challenge to the non-unanimous verdict claim would have been successful or more meritorious than the claim asserted to the appellate court.

For these reasons, McGhee's claims of ineffective assistance of trial and appellate counsel for failing to object to the non-unanimous verdict have no merit. The state courts' denial of relief on these grounds was neither contrary to nor an unreasonable application of *Strickland*. McGhee is not entitled to relief on these claims.

        d.    <u>Claim 4: Right to Testify</u>

McGhee contends that the court should ignore the colloquy in the transcript and accept his claim that he wanted to testify and his trial counsel refused to allow it. His claim, however, is conclusory, unsupported, and fails to demonstrate that his counsel prevented him from testifying.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth, and Fourteenth Amendments.[245] However, a criminal defendant may waive his right to testify if that waiver is knowing, intelligent, and voluntary.[246] A violation of the right occurs only if the "'final decision that [the defendant] would not testify was made against his

---

[244] *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.
[245] *Rock v. Arkansas*, 483 U.S. 44, 49 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre*, 238 F.3d at 634; *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994).
[246] *Bower*, 497 F.3d at 473 (citing *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).

will.'"[247]   When, as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"[248]

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand."[249]   The *Underwood* court specifically identified various problems that are bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof.

> [T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.   It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.[250]

Adopting *Underwood*'s reasoning, the Fifth Circuit has held that "allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic."[251]

McGhee has presented no support for this claim that his counsel would not allow him to testify.   In years past, some courts considered allowing a petitioner the opportunity to present

---

[247] *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)).
[248] *Sayre*, 238 F.3d at 634 (quoting *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).
[249] *Turcios v. Dretke*, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *accord Jones v. Cain*, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010); *Davis v. Quarterman*, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).
[250] *Underwood*, 939 F.2d at 475-76 (citing *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)); *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir.), *cert. denied*, 558 U.S. 950 (2009).
[251] *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (citing *Underwood*, 939 F.2d at 476).

supporting evidence for a bare claim that his right to testify was infringed.[252]   However, under current United States Supreme Court precedent, a federal habeas court is limited to consideration of the evidence and the record that were before the state court that reviewed the merits of the claim.[253]   McGhee provided no evidence or arguments to the state courts other than those before this court, and no evidence (should he have any) can be considered for the first time on federal habeas review.

Thus, McGhee's unsupported claim, even in a verified petition, is insufficient to prove his claim on habeas corpus review.   His self-serving allegations fall far short of establishing that counsel prevented him from testifying.   His argument, therefore, is in a similar posture as that rejected in *Underwood*.   There is nothing in this record sufficient to prove an actual violation of his right to testify by his trial counsel.

Instead, the record includes the state trial court's discussion with McGhee about his right to testify.   The state trial court gave McGhee ample opportunity to confirm or object to the waiver of his right to testify.   As the State prepared to rest at trial, the state trial court had the following conversation with McGhee.

> THE COURT:
> MR. MCGHEE, YOU'RE REPRESENTED BY COUNSEL AND ANYTHING THAT YOU HAVE TOLD COUNSEL IS STRICTLY PRIVILEGED BETWEEN HIM AND YOU; YOUR CONVERSATIONS ARE PRIVILEGED.
> I WANT TO TALK TO YOU VERY BRIEFLY ABOUT WHAT YOUR RIGHTS ARE AT THIS POINT.   YOU'VE HEARD ME SAY MANY TIMES

---

[252] *See Savoy v. Cain*, No. 06-1744, 2008 WL 276542, at *1 (W.D. La. Jan. 29, 2008) (contending that the Fifth Circuit in *Martinez* encouraged a court to allow amendment of a petition before dismissing a right to testify claim for lack of supporting proof) (citing *Martinez*, 181 F.3d at 629); *but see*, *Silva-Garcia v. United States*, No. 10-cr-2224, 2012 WL 5464639, at *4 (S.D. Tex. Nov. 8, 2012) (finding that the Fifth Circuit has not created a right to supplement a bare allegation of right-to-testify).

[253] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011); *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013).

THAT YOU HAVE AN ABSOLUTE RIGHT OF SILENCE, YOU DON'T NEED TO TESTIFY OR INCRIMINATE YOURSELF IN ANY WAY.

I DO ADVISE YOU THAT YOU ALSO HAVE A RIGHT TO TESTIFY IF YOU WISH TO DO SO. AND IF YOU WISH TO TESTIFY, YOU'D BE TREATED AS ANY OTHER WITNESS, BUT ALSO ONCE YOU STARTED TESTIFYING, ONCE YOU COMPLETED YOUR TESTIMONY YOU WOULD HAVE TO ANSWER EVER[Y] LEGITIMATE QUESTION THAT [THE PROSECUTOR] WOULD ASK YOU. DO YOU UNDERSTAND THAT PROCESS?

MR. MCGHEE:
YES, I DO, YOUR HONOR.

THE COURT:
AND YOU'VE HAVE [SIC] THESE CONVERSATIONS WITH YOUR ATTORNEY?

MR. MCGHEE:
YES, I HAVE.

THE COURT:
AND IT'S YOUR DECISION NOT TO TAKE THE STAND; IS THAT CORRECT?

MR. MCGHEE:
THAT'S CORRECT.

THE COURT:
ALL RIGHT. AND YOU'RE MAKING THIS VOLUNTARILY OF YOU OWN FREE-WILL AND YOU'VE DISCUSSED WITH COUNSEL?

MR. MCGHEE:
THAT'S CORRECT.[254]

McGhee was given the opportunity to voice his concerns about his right to testify and instead indicated to the court that he was freely waiving his right to testify. Despite this waiver, McGhee claims that he informed his counsel several times that he wanted to testify but his counsel would not allow it. Even if counsel advised him against testifying, McGhee has not established that such advice was unreasonable or prejudicial.

---

[254] St. R. Vol. 5 of 6, at 1059-60, Trial Tr., Vol. IV, 2/6/14.

On federal habeas review, "the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." [255] However, a defendant's right to testify on his own behalf "may not be waived by counsel as a matter of trial strategy."[256]   When the record shows that the defendant knew of his right to testify and wanted to testify, but simply acquiesced to his attorney's advice, the "only inquiry is whether that advice was sound trial strategy."[257]

In McGhee's case, if he were to testify, he would have been exposed to cross-examination regarding the incriminating evidence presented by the State, including his step-daughter's testimony that he admitted shooting the victims, and challenges to his character, including evidence of his admitted adulterous behavior, propensity to lie about his whereabouts and activities, and his prior criminal history.   McGhee does not indicate any specific proposed testimony he might have provided to benefit his defense.

Under these circumstances, it was reasonable for defense counsel to have determined that the prejudice posed by potential cross-examination outweighed any benefit that McGhee's testimony might have provided to his defense.   McGhee has not demonstrated that counsel's alleged advice to not testify was unreasonable or that the outcome of the trial would have been different but for his counsel's decision to rest the defense without his testimony.

McGhee has not demonstrated a deficiency or prejudice resulting from counsel's failure to call him to testify.   The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.   McGhee is not entitled to relief on this claim.

---

[255] *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985) (citing *Hollenbeck v. Estelle*, 672 F.2d 451, 454 (5th Cir. 1982)).
[256] *United States v. Mullins*, 315 F.3d 449, 454 (5th Cir. 2002).
[257] *Id*. at 453-54.

e.    <u>Claim 5: Challenge Evidence and Investigate</u>

McGhee claims that he received ineffective assistance of counsel when his trial counsel failed to request testing of T.M.'s voice recognition, failed to have the 911 tape analyzed for background noise, and failed to investigate T.M.'s claim that McGhee lived with her and her mother for four years as support of her ability to make a voice identification.   The State contends in its opposition that McGhee fails to establish either prong of the *Strickland* test and has relied on inapplicable legal precedent and unreliable information to present his claims.

i.    Voice recognition testing

McGhee asserts that his counsel provided ineffective assistance because he did not challenge T.M.'s voice recognition or have it tested for reliability in accordance with *Mason v. Brathwaite*, 432 U.S. 98 (1977) and related cases.   In his reply to the State's opposition, he claims that a rain storm and thunder would have created noise sufficient to render T.M.'s identification unreliable under *Brathwaite*.[258]

The well-known *Brathwaite* test assists courts in assessing "overly suggestive" pretrial police identification procedures.[259]   The *Brathwaite* test does not address identifications like T.M.'s that were not the result of police procedures.   As discussed in the sufficiency of the evidence section above, T.M.'s identification was an evidentiary matter for the trier of fact.[260]   A petitioner cannot "transform this evidentiary issue into a due process violation by citing a string of Supreme Court cases regarding 'overly suggestive' pretrial identification procedures."[261]

---

[258] ECF No. 8, at 7.
[259] *Brathwaite*, 432 U.S. at 109-14; *Neil v. Biggers*, 409 U.S. 188, 198 (1972) ("Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.").
[260] *Thomas*, 13 So. 3d at 607; *Passman*, 652 F.2d at 569 (jury's credibility determination is not a question of constitutional dimensions); *Holderfield*, 903 F. Supp. at 1018 (habeas courts defer to jury's credibility determinations).
[261] *United States v. Mendez*, 643 F. App'x 418, 425 (5th Cir. 2016) (citing *Brathwaite*, 432 U.S. at 98).

Furthermore, the Supreme Court has established that identification testimony is constitutionally admissible so long as it is reliable.[262]   As discussed above, in Louisiana, voice identifications are deemed reliable when there is sufficient foundation for the identification including the witness's knowledge of the offender and personal observations.[263]   There was no legal requirement that McGhee's counsel have the voice identification analyzed or tested; technically, there was nothing to test but T.M.'s statement.   To test her statement, the Supreme Court has held that "'[c]ounsel can both cross-examine the identification witnesses and argue in summation as to factors casting doubts as to the accuracy of the identification;'" but identification testimony itself does not violate a defendant's constitutional right to due process.[264]   McGhee's counsel cross-examined T.M. to challenge the reliability of her voice identification.

McGhee's counsel also was not deficient or prejudicial under *Strickland* for failing to object to the identification evidence that was admissible and not unconstitutional.[265]   "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."[266]   In this case, because T.M.'s voice recognition and related testimony did not violate Louisiana law or the Constitution, there was no reason for his counsel to have challenged it outside of his cross-examination of T.M. at trial.   It was appropriate to permit T.M. to testify and allow any questionable reliability of her identification be resolved by the factfinder.[267]

---

[262] *See Brathwaite*, 432 U.S. at 114.
[263] *Mitchell*, 818 So. 2d at 817.
[264] *Brathwaite*, 432 U.S. at 113 n.14.
[265] *Burnett v. Collins*, 982 F.2d 922, 929-30 (5th Cir. 1993).
[266] *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (same); *Johnson*, 306 F.3d at 255 (counsel is not required to make futile motions or frivolous objections); *accord Kimler*, 167 F.3d at 893 ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Smith*, 907 F.2d at 585 n.6 ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also Koch,* 907 F.2d at 530 ("Counsel is not required to make futile motions or objections.")
[267] *Brathwaite*, 432 U.S. at 116.

McGhee has not shown that the state courts' denial of relief was contrary to, or an unreasonable application of the applicable federal law.   He is not entitled to relief on this claim.

    ii.   Analysis of 9-1-1 test

McGhee claims that his counsel was ineffective for failure to have the recording of T.M.'s 9-1-1 call analyzed for background noise.   He notes that T.M. testified that she had two phones with her; one she used to call 9-1-1, and the other to call her father, Patrick Matthews.   McGhee claims that the recording should have been analyzed to determine if the 9-1-1 call contained proof to support Matthews' contention that the rain was so severe that morning that he was not sure whether he had to report to work.[268]   In his traverse to the State's opposition, McGhee again claims that the noise from the storm, thunder and lightning, may have been heard on the 9-1-1 recording, and would have bolstered his claim that T.M. could not have identified his voice.[269]

McGhee's claim is wholly speculative and presumes that it was in fact storming at the time of the shooting and 9-1-1 call.   Contrary to his argument, Matthews did not testify that it was raining when he received the call from T.M.   Instead, Matthews testified that a rain storm had passed through the Baton Rouge area hours earlier around 3:00 a.m.[270]

In addition, McGhee's counsel asked several other witnesses at trial about the weather, and there was no evidence or testimony that it was storming in Hammond at the time of the shooting or raining when police arrived.   T.M. testified that she did not recall anything about the weather in Hammond at the time of the shooting.[271]   Officer Boudreaux, who arrived around 6:00 a.m., testified that he thought the weather was clear at the scene, but he had no real recollection.[272]   Lab

---

[268]  ECF No. 1-2, at 73-74.
[269]  ECF No. 8, at 7.
[270]  *Id*. at 874 (Matthews).
[271]  St. R. Vol. 4 of 6, at 868, Trial Tr., Vol. II, 2/4/14 (T.M.).
[272]  *Id*. at 796 (Officer Boudreaux).

Technician Buratt also recalled that it had rained during the night and there was standing water left in the area outside of the apartment.[273]   Detective Mercante also recalled that it had rained earlier in the night, but it was not enough to awaken him.[274]

Even if it were raining, McGhee has not established that the 9-1-1 call or testing of it for background noises would have been admissible for counsel to have reasonably pursued the information.   He also has not established that the outcome of his trial would have been different had the information been obtained.   At best, any information, assuming it existed, would have been for the jury to weigh in assessing T.M.'s identification which led police to locate and arrest McGhee.   But, the jury also had before it other evidence of McGhee's guilt, including his inculpatory statements and possession of mail from the apartment and Muse's van.   In light of this, McGhee has not established that but for the failure to test the background noise of the 9-1-1 call, which may or may not have revealed anything, the verdict would have been different.   The probability of prejudice may not be based upon an unknown, conjecture, or speculation.[275]

Therefore, McGhee has not established that the denial of relief on this claim was contrary to or an unreasonable application of *Strickland*.   McGhee is not entitled to relief on this claim.

### iii.  Investigation

McGhee alleges that his counsel was ineffective when he failed to investigate the case, McGhee's wife, and McGhee's addresses to refute T.M.'s claim that she recognized McGhee's voice because he had lived with her and Muse, on and off, for about four years.[276]   In support of his claim, McGhee includes a list of addresses attributed to him in the State's records.[277]

---

[273]  *Id*. at 844-45 (Buratt).
[274]  *Id*. at 999 (Det. Mercante).
[275]  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).
[276]  ECF No. 1-2, at 74; ECF No. 8, at 7-8.
[277]  ECF No. 1-2, at 74-75.

The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on matters of trial strategy, including presentation of evidence and questioning of witnesses, through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.[278]   It is irrelevant that another attorney might have made other choices or handled such issues differently.   As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case.   Even the best criminal defense attorneys would not defend a particular client in the same way."[279]

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"[280]   A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.[281]   To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.[282]

Initially, McGhee mentions simply that he had a wife, and the victims each were married but not to each other.   He also asserts in his traverse that counsel also did not investigate Smith's wife.[283]   He has not indicated what about his wife or Mrs. Smith should have been investigated. To the extent he suggests either person should have been called as a witness, "'[c]omplaints of

---

[278] *Strickland*, 466 U.S. at 689.

[279] *Id.*

[280] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted); *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).

[281] *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.") (citing *Strickland*, 466 U.S. at 696)

[282] *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation).

[283] ECF No. 1-2, at 74; ECF No. 8, at 8.

uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"[284]    To prevail, the petitioner must name the witness, demonstrate that the witness was available to testify and would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.[285]    The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"[286]

McGhee has presented none of this information about his wife or Mrs. Smith.    He does not indicate full names, willingness to testify, or to what they each would have testified relevant to his defense.    He has not met his burden of establishing deficient performance by counsel in failing to call, or investigate, either person.    Without more than his conclusory statements, McGhee has not established that his counsel was ineffective under *Strickland*.

McGhee also claims that his counsel was ineffective for not investigating, or presenting evidence of, his address history to refute the claim by T.M. that he lived with her and Muse throughout the years before the murder.    McGhee lists in his memorandum a series of addresses which he claims the State had in their records.[287]    In its response, the State suggests that these addresses came from a "TLO-XP" criminal history report provided to McGhee during pretrial discovery.[288]    This would mean that McGhee's counsel had the documents before trial.

[284] *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008).
[285] *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray*, 265 F. App'x at 298).
[286] *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).
[287] ECF No. 1-2, at 74-75.
[288] ECF No. 6, at 25-2; *see* St. R. Vol. 1 of 6, 144-163, TLO-XP Report (pages 1 through 20 of 29), 4/5/12.

The address summary in that report has information similar to what McGhee included in his memorandum.[289]   Both lists, however, simply show addresses affiliated with McGhee and/or his phone numbers over the decade before the murders.   For example, both McGhee's memorandum and the report show that from 2008 to 2012, during which time he was dating Muse, McGhee had multiple addresses within Independence, Hammond, Dequincy, Slidell, and Baton Rouge, Louisiana, and one address in Houston, Texas.[290]   McGhee has not explained how evidence of his affiliation with these numerous addresses would have been beneficial to his defense.   The information does not preclude the possibility that he stayed in Muse's home during the years they dated.   This possibility is also bolstered by the trial evidence that mail, including a telephone bill, were addressed to McGhee at Muse's Mallard Drive address.   The jury heard testimony that this mail was recovered in the van and appeared to have been taken from Muse's mailbox by McGhee on the night of the murders.[291]

Furthermore, "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"[292]   Based on the record, it was not unreasonable for counsel to have concluded that presentation of McGhee's inconsistent and overlapping use of addresses, including Muse's addresses, would not have benefited his defense.

To the extent McGhee contends that his counsel should have used the information to discredit T.M., he has not shown deficient or unreasonable performance.   It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness'

---

[289] *Id*. at 163.
[290] *Id*.; ECF No. 1-2 at 74-75.
[291] St. R. Vol. 4 of 6, at 820-21, 823-26, Trial Tr., Vol. II, 2/4/14 (Buratt).
[292] *Williams v. Cockrell*, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).

testimony, requires a quintessential exercise of professional judgment."[293]    As it was, his counsel questioned T.M. in detail about the dates when and addresses at which she claimed McGhee lived with them.[294]    His counsel's questions led to T.M.'s concession that she did not remember how long she had known McGhee, how long he dated her mother, exactly what street address she had in other towns, or exactly how long he lived with them during the on-and-off relationship with her mother.[295]    All of this was before the factfinder at trial and subject to the jury's credibility determination.

Other than his ex-wife, Smith's wife, and these addresses, McGhee blanketly asserts that his counsel simply did not investigate the case.    His bare statement fails to indicate what steps counsel took or failed to take that reasonably would have benefited the defense.    Without more, he cannot show that counsel performed deficiently.    He also has not indicated that any beneficial information would have been revealed through further investigation of the case.    McGhee's bare argument is speculative at best and insufficient to meet his burden of proof.

Under the doubly deferential standards applied under the AEDPA and *Strickland*, McGhee has not shown that the state court's denial of relief was contrary to or an unreasonable application of federal law.    He is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that McGhee's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[293] *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cain*, No. 09-2848, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).
[294] St. R. Vol. 4 of 6, at 863-65, Trial Tr., Vol. II, 2/4/14.
[295] *Id*.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[296]

New Orleans, Louisiana, this _____ 10th day of June, 2021.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[296] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)).  *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).